IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


HOLLY ANN WILLIAMS,

       Plaintiff,


vs.                                               CV 05-0361 JP/WDS

JODY GONTERMAN and
FERRIS SIMMONS,

       Defendants.


MEMORANDUM OPINION AND ORDER

Plaintiff Holly Ann Williams filed Plaintiff's Motion for Summary Judgment Against

Defendants Gonterman and Simmons on December 15, 2005 (Docket No. 21).  In her motion,

Plaintiff asserts that she is entitled to summary judgment on her 42 U.S.C. § 1983 claim against

Defendant Jody Gonterman and Defendant Ferris Simmons for violating her Fourth Amendment

rights by conducting an unreasonable search of Plaintiff's apartment.  After careful review of the

arguments of counsel and the evidence, the Court determines that Plaintiff's motion should be

denied.


*I.  Standard of Review*

A motion for summary judgment should be granted if there is no genuine issue as to any

material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P.

56(c).  In evaluating a motion for summary judgment, the court examines the factual record and

reasonable inferences therefrom in a light most favorable to the non-moving party.  *Lawmaster v. Ward*, 125 F.3d 1341, 1346 (10th Cir. 1997).   The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The non-moving party must then come forward with evidence demonstrating that there is a genuine issue of material fact.  *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir. 1991).  The non-moving party may not avoid summary judgment by resting upon the mere allegations or denials in that party's pleadings.  *Id.* at 891.   An issue of material fact is genuine if a reasonable jury could return a verdict for the non-moving party.  *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir. 1996).

## II.  Factual Background

The following facts are presented in a light most favorable to the Defendants.  On July 30, 2004, Defendant Jody Gonterman and Defendant Ferris Simmons, both uniformed Albuquerque Police Department police officers, went to Plaintiff Holly Ann Williams' apartment to seek information from Plaintiff about suspected methamphetamine production.  Defendants were accompanied by another Albuquerque Police Department police officer, Lee Speer.

Defendant Simmons had earlier received information from a clerk at a Walgreens pharmacy that Plaintiff was a repeat buyer of cold pills containing pseudoephedrine.  Defendant Simmons had information that Plaintiff had bought as many as 168 cold pills during approximately a two and a half month period.  Cold pills containing pseudoephedrine may be used in the manufacture of methamphetamine.  Normally, a minimum of 1,000 pills are needed to produce one once of finished methamphetamine, although methamphetamine is usually sold in quantities of

one gram.

Defendants knocked on the front door of Plaintiff's apartment.  When Plaintiff observed the two officers at her front door, Plaintiff opened the door and came outside the apartment. Before Plaintiff pulled the door closed behind her, Defendant Simmons saw children's clothing and toys inside Plaintiff's apartment.

Defendant Simmons began to question Plaintiff about Plaintiff's possible involvement in the manufacture of methamphetamine.  Plaintiff denied any involvement.  During their conversation, Defendant Simmons expressed concern about a child possibly being inside Plaintiff's apartment.  Plaintiff said that she did not have any children.  Defendant Simmons then mentioned that she had observed children's clothing and toys inside Plaintiff's apartment.  Plaintiff responded that the clothing and toys belonged to a friend.  However, Plaintiff's response did not clarify whether there were any children inside the apartment.  Plaintiff also indicated during this conversation that a male friend was inside her apartment.  Defendants requested, and were denied, consent to enter and search Plaintiff's apartment.

At one point during the conversation, Plaintiff's cat jumped onto an inside window sill, causing the vertical blinds inside the window to part.  Defendant Gonterman saw a large glass jar on a coffee table through the opening in the blinds.  The large jar appeared to contain a bi-layer fluid and to be surrounded by several bottles of chemicals.  Bi-layer fluids are composed of two separate layers of different colors, and are often present during different phases of the methamphetamine manufacturing process.  Also, bi-layer fluids are often kept in glass jars during the manufacturing process.  The presence of a bi-layer fluid led Defendant Gonterman to believe that Plaintiff was actively manufacturing methamphetamine in her apartment.

After Defendant Gonterman told Defendant Simmons that she had seen a bi-layer fluid through the window, Defendant Simmons looked through the window and observed the large jar apparently containing bi-layer fluid.  Defendants then became concerned about the safety of any individuals inside and surrounding Plaintiff's apartment.  Bi-layer fluids are associated with risks of explosion, fire, and toxic vapors.  Although methamphetamine manufacture often produces a pungent smell similar to a blend of acetone and cat urine, Defendants did not notice any odor coming from Plaintiff's apartment.  However, Defendants submit that the noxious fumes which emanate from a bi-layer fluid may be odorless.[1]

After observing the ostensible bi-layer fluid on Plaintiff's coffee table, Defendants asked Plaintiff to step aside, entered Plaintiff's apartment, and then proceeded to sweep the apartment with their guns drawn.  Defendants encountered Plaintiff's male friend and ordered him out of the apartment.  Defendants did not find any children in the apartment.  However, soon after entering the apartment, Defendants discovered that the supposed bi-layer fluid on Plaintiff's coffee table was in reality a two-layer candle.  The bottles surrounding the candle contained household cleaners. After realizing that the jar contained only a candle, Defendants left the interior of Plaintiff's apartment and resumed questioning Plaintiff outside the front door.  Defendants did not disturb or damage any property inside Plaintiff's apartment.

---

[1]      Defendant Simmons has been a police officer with the Albuquerque Police Department for five years.  Defendant Simmons has taken over 150 hours of instruction regarding methamphetamine manufacturing, has been certified as a Clandestine Laboratory Investigator since 2003, and has been certified by OSHA as a Site Safety Officer since 2003.  Defendant Gonterman has been in law enforcement for ten years and has been a police officer with the Albuquerque Police Department for four of those years.  Defendant Gonterman has been trained in the recognition and investigation of methamphetamine laboratories and has participated in the investigation of approximately one hundred methamphetamine laboratories throughout the City of Albuquerque.

At some point while talking to the Defendants, Plaintiff said that she bought the cold pills

to give to other individuals for use in the manufacture of methamphetamine.  Defendants assert

that the individuals mentioned by Plaintiff were known methamphetamine manufacturers.  It is

unclear whether Plaintiff mentioned these names before or after Defendants entered her

apartment.

### III.  Discussion

Defendants first argue that Plaintiff is not entitled to summary judgment because there are

genuine issues of material fact.  Plaintiff claims that Defendants Simmons and Gonterman violated

her Fourth Amendment rights by unreasonably searching her apartment.  The Fourth Amendment

protects the "right of the people to be secure in their persons, houses, papers, and effects against

unreasonable searches and seizures."  Warrantless searches of a home are presumptively

unreasonable under the Fourth Amendment.  *Payton v. New York,* 445 U.S. 573, 586 (1980);

*United States v. Anderson*, 981 F. 2d 1560, 1567 (10th Cir. 1992).  "In terms that apply equally

to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at

the entrance to the house.  Absent exigent circumstances, that threshold may not reasonably be

crossed without a warrant." *Payton*, 445 U.S. at 589-90.  "Threats to public safety are widely

accepted as one of the exigent circumstances exceptions to the Fourth Amendment's warrant

requirement." *United States v. Rhiger*, 315 F.3d 1283,1288 (10th Cir. 2003).  Generally, exigent

circumstances arise when police officers (1) have reasonable grounds to believe that there is an

immediate need to protect their lives or others, (2) are not motivated by an intent to arrest and

seize evidence, and (3) have a reasonable basis, approaching probable cause, to associate an

emergency with the area. *United States v. Wicks*, 995 F.2d 964, 970 (10th Cir. 1993).  However, "there is no absolute test for the presence of exigent circumstances, because such a determination ultimately depends upon the unique facts of each controversy." *Id*.

 After reviewing the factual record, the Court finds that there are genuine issues of material fact which preclude granting Plaintiff's motion for summary judgment.   For example, there is conflicting evidence about whether Defendant Simmons received information that Plaintiff purchased 96 cold pills containing pseudoephedrine in April 2004.  In her affidavit, Defendant Simmons swore that she received information that Plaintiff purchased 96 cold pills on April 14, 2004.  However, Plaintiff provided copies of lists from Walgreens pharmacy in which the quantity of pills purchased on April 14, 2004 is unreadable, and points out that, at her deposition, Defendant Simmons was unable to read the number of pills on the list.

 Plaintiff also challenges Defendant Simmons' assertion that the fumes from bi-layer fluid may be odorless.  Although Defendant Simmons stated in her affidavit that the fumes may be odorless, Plaintiff points out that Defendant Simmons was unable to testify at her deposition as to whether a bi-layer fluid would likely produce fumes.  Defendants also assert in their affidavits that they immediately left Plaintiff's apartment after discovering that the supposed bi-layer fluid was only a candle.  But Plaintiff notes that Defendants testified during their depositions that they continued to search the apartment after discovering the truth about the candle.  This has significance as to the question of whether Defendants were motivated by an intent to seize evidence.   Resolution of these facts would require determining Defendants' credibility, which a court may not do in deciding a motion for summary judgment.

 Finally, there is conflicting evidence about when Plaintiff provided the Defendants the

names of two known methamphetamine manufacturers.[2]  Defendant Simmons testified in her

deposition that Plaintiff mentioned the names *after* Defendants entered the apartment.  Defendant

Gonterman, on the other hand, testified at her deposition that Plaintiff supplied the names *before*

Defendants entered the apartment.

Resolution of these factual issues, among others, is important in order to assess whether it

was reasonable for Defendants to conclude that Plaintiff was actively manufacturing

methamphetamine in her apartment.  For example, if Defendants had information that Plaintiff had

purchased a large quantity of cold pills, if the fumes from methamphetamine manufacturing may

be odorless, and if Plaintiff mentioned the names of two known methamphetamine manufacturers

before Defendants entered the apartment, it may have been reasonable for Defendants to believe

that the candle on Plaintiff's coffee table was a bi-layer fluid associated with producing

methamphetamine.  But if Defendants' only information was that Plaintiff had purchased a small

quantity of cold pills, if it is very unusual for methamphetamine fumes to be odorless, and if

Plaintiff did not mention the names of known methamphetamine manufacturers before Defendants

entered Plaintiff's apartment, then it may have been unreasonable for Defendants to jump to the

conclusion that Plaintiff was actively manufacturing methamphetamine.  There is a genuine issue

of material fact as to whether Defendants had a reasonable basis, approaching probable cause, to

associate an emergency with Plaintiff's apartment.

---

[2]  Plaintiff states that she gave Defendants false names in an effort to make Defendants
leave the front door area of her apartment.

The materiality of the disputed facts is apparent, especially because Defendants have

argued that Plaintiff' motion should be denied on the ground that they are entitled to qualified

immunity.³   In order to overcome the defense of qualified immunity, Plaintiff would have to

establish first that the defendant violated a constitutional right, and second that the right was so

clearly established that a reasonable person in Defendants' position would have known that her

conduct violated that right.  *See, e.g., Maestas v. Lujan*, 351 F.3d 1001, 1007 (10th Cir. 2003).

Although "[t]he court is to determine the legal questions of whether the plaintiff's claim asserts a

violation of a constitutional right and whether the right was clearly established at the time . . .

[t]he jury should determine the defendant's objective reasonableness where this question depends

on whose version of the facts are believed." *Trujillo v. Large*, 2006 U.S. App. LEXIS 2592

(10th Cir. Feb. 1, 2006) (unpublished) (citing *Maestas*, 351 F.3d at 1008-1009).  If the jury

believes Defendants' version of the facts, Defendants may be entitled to qualified immunity.  If

Defendants' saw what they reasonably believed to be an active methamphetamine lab on Plaintiff's

coffee table, then Defendants would have had exigent circumstances to enter Plaintiff's apartment.

*See, e.g., Rhiger*, 315 F.3d at 1291. The jury will have to determine whether it was objectively

reasonable for Defendants to believe that exigent circumstances existed allowing them to enter

Plaintiff's apartment without a warrant.  Since genuine issues of material fact preclude summary

judgment in Plaintiff's favor, Plaintiff's motion will be denied.

IT IS THEREFORE ORDERED THAT Plaintiff's Motion for Summary Judgment

---

³ Although Defendants assert that Plaintiff is not entitled to summary judgment because of the defense of qualified immunity, Defendants have not filed a motion for summary judgment affirmatively raising the defense.

Against Defendants Gonterman and Simmons (Docket No. 21) is DENIED.

SENIOR UNITED STATES DISTRICT JUDGE